**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BRANDON PRICE, MEGAN ONORATO,
and MARIO LURIG, individually and on behalf
of all others similarly situated,                          Case No. 1:20-cv-1081

               Plaintiffs,                          Hon Paul L. Maloney

    v.

THE MURDER MYSTERY COMPANY, LLC,

          Defendant.

---

Shelby Woods                          Brian M. Schwartz (P69019)
Adam M. Harrison                      Ashley N. Higginson (P83992)
HKM Employment Attorneys LLP          Miller, Canfield, Paddock & Stone
*Attorneys for the Plaintiffs*        *Attorneys for the Defendant*
730 17th Street, Suite 750            150 West Jefferson, Suite 2500
Denver, Colorado 80202                Detroit, Michigan 58226
(720) 235-0105                        (313) 963-6420
swoods@hkm.com                        schwartzb@millercanfield.com
aharrison@hkm.com                     higginson@millercanfield.com

Brian E. Koncius (P69278)
Bogas & Koncius PC
*Attorneys for the Plaintiffs*
31700 Telegraph Road, Suite 160
Bloomfield, Michigan 48025
(248) 502-5000
bkoncius@kbogaslaw.com

---

## JOINT MOTION SEEKING FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

      In anticipation of the Fairness Hearing set for October 3, 2022 in this matter, the Plaintiffs,

Brandon Price, Megan Onorato, and Mario Lurig ("Plaintiffs"), individually and on behalf of all

others similarly situated, by and through their undersigned counsel from HKM Employment

Attorneys LLP and Bogas & Koncius PC, and the Defendant, The Murder Mystery Company, LLC

("Defendant") by and through its counsel from Miller, Canfield, Paddock & Stone, pursuant to Fed. R. Civ. P. 23(e), hereby move the Court to grant final approval of the Settlement memorialized in the Class Action Settlement Agreement and Release ("Settlement Agreement") attached to this Motion and Brief as Exhibit 1, and state as follows:

1.      In this putative class and collective action, the Plaintiffs allege that the Defendant violated Colorado and federal wage and hour law by failing to pay minimum wages to certain individuals who worked for the Defendant as actors, directors, and assistant directors. *See* ECF No. 26.

2.      On November 22, 2021, the Plaintiffs and the Defendant ("Parties") participated in mediation with the Honorable Boyd N. Boland (retired). At that mediation, the Parties agreed, subject to final approval by this Court, to settle the claims of "All individuals who worked for the Murder Mystery Company as actors, directors, and/or assistant directors in Colorado from August 18, 2017 to August 31, 2020" ("Class Members" or "Settlement Class") on the terms they have memorialized in the attached Settlement Agreement (the "Settlement"). Exhibit 1.

3.      The Parties also agreed, for the purposes of the Settlement, to certification of the Class for settlement purposes, preliminary approval of their Settlement pursuant to Fed. R. Civ. P. 23 ("Rule 23"), a 60-day notice period, and final approval following the notice period. *Id.*; *see Cross v. Hots, Inc.*, No. 1:18-CV-00276-RJJ-PJG, 2019 WL 12288177, at *3 (W.D. Mich. Mar. 21, 2019) (discussing two-step process for approval of a class action settlement).

4.      On February 7, 2022, the Parties submitted an initial Joint Motion seeking Preliminary Approval of Class Action Settlement. [ECF 52]. On February 9, 2022, Judge Maloney denied that motion without prejudice.  In his denial, Judge Maloney held that while "Generally, the Court finds the proposed settlement fair," that he had "identified one problem." [ECF 53].

Specifically, Judge Maloney held that for class action settlements, released claims must share a "factual predicate" with the claims pled in a complaint and ruled that the Settlement Agreement did not provide a meaningful limit on the release as proposed.  *Id.*

5.      In accordance with the Court's instructions, the Parties amended the Settlement Agreement and on March 13, 2022 filed a Joint Motion Seeking Preliminary Approval of Amended Class Action Settlement, and a Brief in support of that motion. [ECF No. 57]. The Court granted the motion on March 15, 2022. [ECF No. 58].

6.      Pursuant to the Court's order granting preliminary approval, the Parties and the Settlement Administrator approved by the Court, Rust Consulting Inc. ("Administrator"), sent notice of the Settlement to seventy-two (75) Settlement Class Members during a 60-day notice period. Exhibit 2: Rust Decl. The 60-day notice period ended on June 11, 2022.

7.      During the 60-day notice period, the Parties discovered that five (5) individuals who fell under the definition of the Settlement Class approved by the Court ("Additional Settlement Class Members") had been unintentionally omitted from the Class and had not been sent notice or given the opportunity to opt-out of or object to the Settlement, as required by Fed. R. Civ. P. 23(c)(2).

8.      The Parties promptly conferred and agreed to procedures to ameliorate that situation including: amending the Settlement Agreement to include the Additional Settlement Class Members, supplemental notice for the Additional Settlement Class Members, extensions of time for the filing of the parties' Joint Motion for Final Approval of the Settlement, a resetting of the Final Fairness Hearing, and notice to all of the Settlement Class Members regarding the new date of the Final Fairness Hearing. [ECF No. 61]; *see also* Exhibit 3: Amendment.

9.      On July 5, 2022, the Court issued a Stipulated Order approving the Parties'

proposed procedures, and resetting the Final Fairness Hearing for October 3, 2022 at 11:00 a.m. [ECF No. 62]. The Parties then proceeded to carry out supplemental notice in accordance with the Stipulated Order. Exhibit 4: Kern Decl.

10.     As discussed in the attached Brief, the Parties' settlement is "fair, reasonable, and adequate" under Rule 23 of the Federal Rules of Civil Procedure and the legal standards applied to class action settlements by Courts in the Sixth Circuit. *See* Fed. R. Civ. P. 23(e); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (discussing seven "*UAW* factors" from *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) that the Sixth Circuit established "to assess whether or not a class action settlement is 'fair, reasonable, and adequate' under Federal Rule of Civil Procedure 23(e)").

11.     Here, the parties argue that there has been no fraud or collusion. *See Déjà Vu*, 925 F.3d at 894. Absent the Settlement, this litigation would be lengthy, complex, and expensive. *See id.* The Parties and their counsel engaged in sufficient negotiations, including an exchange of information during mediation, to make informed decisions regarding the fairness of the Settlement, and determined that the Settlement is fair and reasonable. *See id*. No Settlement Class Member objected to the Settlement, and only one Member opted out. *See id.*; *see also* Exhibit 2. Additionally, the public interest weighs in favor of approving the Settlement, since it provides each Settlement Class Member with most of the relief that the Plaintiffs alleged was due to them. *See Déjà Vu*, 925 F.3d at 894-95. Most importantly, bona fide disputes of law and fact between the Parties raise doubts about the Plaintiffs' and the Class Members' "likelihood of success on the merits." *See Déjà Vu*, 925 F.3d at 895 (holding that the most important of the *UAW* factors is the likelihood of success on the merits).

Because all of the *UAW* factors applied in this Circuit weigh in favor of approval, the parties respectfully request that this Court:

(1) Grant final certification under Fed. R. Civ. P. 23 of the Settlement Class, consisting of

> All individuals who worked for the Murder Mystery Company as actors, directors, and/or assistant directors in Colorado from August 18, 2017 to August 31, 2020.

(2) Grant final approval of the Settlement reflected in the Parties' Settlement Agreement and the Amendment to the Settlement Agreement; and

(3) Order the Defendant to pay the Settlement Amount, and the Administrator to distribute the Settlement in accordance with the Settlement Agreement and Amendment.

A proposed Order that has been stipulated to by the Parties is attached to this Motion and Brief.

Respectfully submitted on this 7th day of September, 2022.

/s/ Adam M. Harrison

_____

Shelby Woods
Adam M. Harrison
HKM Employment Attorneys LLP
*Attorneys for the Plaintiffs*
730 17th Street, Suite 750
Denver, Colorado 80202
720.255.0370
swoods@hkm.com
aharrison@hkm.com

Brian E. Koncius (P69278)
Bogas & Koncius PC
*Attorneys for the Plaintiffs*
31700 Telegraph Road, Suite 160

/s/ Brian M. Schwartz

_____

Brian M. Schwartz
Miller, Canfield, Paddock & Stone
*Attorneys for the Defendant*
150 West Jefferson Street, Suite 2500
Detroit, Michigan 58226
313.963.6420
schwartzb@millercanfield.com

Bloomfield, Michigan 48025
248.502.5000
bkoncius@kbogaslaw.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON PRICE, MEGAN ONORATO,
and MARIO LURIG, individually and on behalf
of all others similarly situated,                                   Case No. 1:20-cv-1081

                        Plaintiffs,                                 Hon Paul L. Maloney

            v.

THE MURDER MYSTERY COMPANY, LLC,

                        Defendant.

---

Shelby Woods                                  Brian M. Schwartz (P69019)
Adam M. Harrison                              Ashley N. Higginson (P83992)
HKM Employment Attorneys LLP                  Miller, Canfield, Paddock & Stone
*Attorneys for the Plaintiffs*                *Attorneys for the Defendant*
730 17th Street, Suite 750                    150 West Jefferson, Suite 2500
Denver, Colorado 80202                        Detroit, Michigan 58226
(720) 235-0105                                (313) 963-6420
swoods@hkm.com                                schwartzb@millercanfield.com
aharrison@hkm.com                             higginson@millercanfield.com

Brian E. Koncius (P69278)
Bogas & Koncius PC
*Attorneys for the Plaintiffs*
31700 Telegraph Road, Suite 160
Bloomfield, Michigan 48025
(248) 502-5000
bkoncius@kbogaslaw.com

---

**BRIEF IN SUPPORT OF JOINT MOTION SEEKING FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………….. 9

I.      INTRODUCTION…………………………………………………………………11

II.     STATEMENT OF RELEVANT FACTS…………………………………………… 13

III.    NOTICE PROVIDED TO SETTLEMENT CLASS MEMBERS………………………15

IV.    PROPOSED SETTLEMENT………………………………………………………17

V.      REQUEST FOR FINAL CLASS CERTIFICATION………………………………...20

VI.    REQUEST FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT………...23

VII.   CONCLUSION…………………………………………………………………...32

## TABLE OF AUTHORITIES

Cases                                                                                                      Page(s)

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................. 19

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ............................................................................................. 23

*Balle-Tun v. Zeng & Wong, Inc.*,
  2022 WL 1521767 (D. Colo. May 13, 2022) .................................................... 24

*Bautista v. Twin Lakes Farms, Inc.*,
  2007 WL 329162 (W.D. Mich. Jan. 31, 2007) ................................... 19, 20, 21, 22

*Brunson*,
  433 P.3d ................................................................................................................ 16

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 ........................................................................................................... 23

*Chao v. Akron Insulation & Supply, Inc.*,
  184 F. App'x 508 (6th Cir. 2006) ........................................................................ 23

*Cordova-Gonzalez v. TW Lath-N-Stucco, Inc.*,
  2021 WL 5086065 (D. Colo. Nov. 2, 2021) ....................................................... 24

*Cross v. Hots, Inc.*,
  2019 WL 12288177 (W.D. Mich. Mar. 21, 2019) ..................................... 2, 19, 21, 27

*Daoust v. Maru Rest., LLC*,
  2019 WL 2866490 (E.D. Mich. July 3, 2019) ............................................... 27, 28

*Dekker v. Constr. Specialties of Zeeland*, Inc.,
  2012 WL 726741 (W.D. Mich. Mar. 6, 2012) ..................................................... 24

*Does 1-2 v. Deja Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) .......................................... 4, 11, 12, 22, 27, 28, 29, 30

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................... 30

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ............................................................................... 29

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) ................................................................ 4, 11, 22, 23

*Keller v. Miri Microsystems LLC*,
  781 F.3d 799 (6th Cir. 2015) ............................................................................... 23

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009) ......................................................................... 12, 27

*Mumby v. Pure Energy Servs. (USA), Inc.*,
  636 F.3d 1266 (10th Cir. 2011) .......................................................................... 25

*Oldershaw v. DaVita Healthcare Partners, Inc.*,
  255 F. Supp. 3d 1110 (D. Colo. 2017) ................................................................ 16

*Pilmenstein v. Devereux Cleo Wallace*,
  2021 COA 59 ............................................................................................ 18, 24, 25

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
  636 F.3d 235 (6th Cir. 2011) ............................................................................... 22

*Powers v. Hamilton County Public Defender Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ................................................................ 19
*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
    825 F.3d 299 (6th Cir. 2016) ................................................................ 23
*Sobolewski v. Boselli & Sons, LLC*,
    342 F.Supp.3d 1178 (D. Colo. 2018) .................................................... 24
*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) .......................................................... 30, 31
*Widdis v. Marathon Petroleum Co., LP*,
    2014 WL 11444248 (E.D. Mich. Nov. 18, 2014) ................................. 21

Statutes

29 U.S.C. § 201 ............................................................................... 10, 16
29 U.S.C. § 216(b) ........................................................................... 13, 16
29 U.S.C. § 256 ...................................................................................... 16
Article XVII, Section 15 of the Colorado Constitution ......................... 10
C.R.S. § 8-4-101 .................................................................................... 10
C.R.S. § 8-6-101 .................................................................................... 10
C.R.S. § 8-4-122 .............................................................................. 24, 25
C.R.S. § 8-4-101(5) ............................................................................... 23
C.R.S. § 8-4-109(3)(c) .......................................................................... 25
C.R.S. § 13-80-103.5(1) ........................................................................ 24

Regulations

29 C.F.R. §§ 785.35-785.39 .................................................................. 24

## I.    INTRODUCTION

In this putative class and collective action, the Plaintiffs Brandon Price ("Price"), Megan Onorato ("Onorato"), and Mario Lurig ("Lurig") (collectively, "Plaintiffs") allege that Defendant The Murder Mystery Company, LLC ("Defendant") violated Article XVII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.* ("CWA"), the Colorado Minimum Wages of Workers Act, C.R.S. § 8-6-101 *et seq.* ("CMWA"), and Colorado's wage and hour regulations, 7 C.C.R. 1103-1, (collectively, "Colorado Wage and Hour Law"), and the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), by failing to pay them minimum wages for hours that they worked. Price also asserts claims against Defendant for unjust enrichment, FLSA retaliation, and wrongful termination in violation of public policy.[1]

Defendant denies these allegations and has filed Motions to Dismiss Plaintiffs' claims and otherwise vigorously defended itself in this action.

The Plaintiffs and the Defendant ("Parties") have agreed, subject to final approval by this Court, to settle the claims of the Plaintiffs and all individuals who worked for the Defendant as actors, directors, and/or assistant directors from August 18, 2017 to August 31, 2020 ("Class Members") on the following terms:

(1)  The Defendant will pay the Class Members total combined additional compensation of $55,830.00[2] – which will provide each Class Member with eight hours of pay for

---

[1] While the Settlement Agreement includes a release of all of the Plaintiffs' claims, this Motion and Brief are focused on the relief proposed for the Class, which requires court approval. *See* Fed. R. Civ. P. 23(e).

[2] After the Parties filed their motion for preliminary approval, they discovered that five (5) individuals who were not originally included as Settlement Class Members were properly part of this action. Accordingly, they amended the Settlement Agreement to account for these Members and adjusted the Settlement Amount to account for payments to those five individuals. *See* ECF 62; Exhibit 4.

training/ride-along hours (at the 2020 minimum wage, regardless of when during the class period the training/ride-along hours may have occurred), plus 2.5 hours of pay for every show in which they performed during the relevant period (also at the 2020 minimum wage, regardless of when during the class period the Class Member worked);

(2) The Defendant will pay Price $18,500.00 to settle his individual claims regarding his termination;

(3) Plaintiffs move for and Defendant does not oppose service awards of $3,000.00 to Price, $2,500 to Onorato, and $2,500 to Lurig;

(4) The Plaintiffs move the Court to approve attorney's fees of $34,000.00 (29.5% of the Settlement), and costs of $800.00;

(5) The Defendant will pay the costs of administering the Settlement; and

(6) The Parties and all Class Members who did not opt out will release all claims they brought or could have brought in this action which are based upon or reasonably relate to the allegations in the Complaint.

The Court should approve the Settlement because it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (discussing seven "*UAW* factors" from *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) that the Sixth Circuit established "to assess whether or not a class action settlement is 'fair, reasonable, and adequate'") Simply, in this matter, there has been no fraud or collusion. *See Déjà Vu*, 925 F.3d at 894. Absent the Settlement, this litigation would be lengthy, complex, and expensive. *See id.* The Parties and their counsel engaged in sufficient negotiations, including an exchange of information during mediation, to make informed decisions regarding the fairness of the Settlement, and determined

that the Settlement is fair and reasonable. *See id*. No Settlement Class Member objected to the Settlement, and only one Member opted out. *See id.*; *see also* <u>Exhibit 2</u>. The public interest weighs in favor of approving the Settlement, since it provides each Settlement Class Member with most of the relief alleged to be due to them. *See Déjà Vu*, 925 F.3d at 894-95. Moreover, legitimate disputes of law and fact raise doubts about the Plaintiffs' and the Class Members' "likelihood of success on the merits." *See Déjà Vu*, 925 F.3d at 895 (holding that the most important of the *UAW* factors is the likelihood of success on the merits). Finally, the released claims in the Settlement share a "factual predicate" with the claims pled in the Complaint and the Settlement Agreement provides a meaningful limit on the release.  The release language of the Settlement Agreement focuses only on claims based on the allegations in the Complaint or claims that are reasonably related thereto.  *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009).  Accordingly, for the reasons set forth herein, final approval of the Settlement is appropriate.

## II.    STATEMENT OF RELEVANT FACTS

The Defendant is an entertainment company that is primarily engaged in the business of presenting theatrical shows at dinner theaters throughout the United States. Price worked for the Defendant as an actor, director, and assistant director from August 2016 to May 13, 2020. Onorato worked for the Defendant as an actor and assistant director from October 2016 to May 13, 2020. Luring worked for the Defendant as an actor from August 2018 to December 2018.

In total, 80 actors, directors, and assistant directors ("Class Members")[3] worked for the

---

[3] During mediation, the Parties agreed to a settlement amount on behalf of 81 individuals. Subsequently, the Parties discovered that some individuals (six in total) had been included who were not properly part of the Settlement Class, while others (five in total) who should have been part of the Class were excluded. Further, one individual opted out of the action. Exhibit 2. The Parties have conferred with each other and communicated with the Administrator on numerous occasions to correct any errors, and now believe the total number of Settlement Class Members to be 79.

Defendant during the period from August 2017 to August 2020.

On August 18, 2020, Price and Onorato initiated this action by filing an Individual, Collective and Class Action Complaint and Jury Demand ("Complaint") against the Defendant in the United States District Court for the District of Colorado, bearing Case No. 20-cv-01474. ECF No. 1. On November 9, 2020, the United States District Court for the District of Colorado transferred the case to this Court. ECF No. 13. On February 1, 2021, the Plaintiffs filed their First Amended Individual, Collective and Class Action Complaint and Jury Demand ("Amended Complaint"), adding Lurig as a Plaintiff. ECF No. 26.

In the Amended Complaint, the Plaintiffs allege that the Defendant violated Colorado Wage and Hour Law and the FLSA by: (1) failing to pay the Plaintiffs and similarly-situated employees minimum wages for hours spent training and/or participating in "ride-along" shows at the beginning of their employment; and (2) failing to pay the Plaintiffs and similarly-situated employees minimum wages for time spent rehearsing, preparing for, and tearing down shows. ECF No. 26 ¶¶ 2, 61-78. Price also alleges individual claims of unjust enrichment, retaliation in violation of the FLSA, and wrongful termination.

On March 2, 2021, the Defendant filed a Motion to Dismiss Plaintiffs' First Amended Complaint, disputing all of the Plaintiffs' claims and asserting, *inter alia*: (A) that the Plaintiffs were not "employees," but rather independent contractors under the FLSA and Colorado law; (B) that the Plaintiffs' and Class Members' claims were barred by the applicable statutes of limitations; and (C) that the Plaintiffs could not establish that class certification was appropriate under Rule 23 and/or that conditional certification was appropriate under 29 U.S.C. § 216(b). ECF No. 30. The Defendant also moved to dismiss Price's unjust enrichment, FLSA retaliation, and wrongful

termination claims for failure to state a claim. ECF No. 30. On June 23, 2021, the Plaintiffs filed a Motion for Conditional Certification of FLSA Collective Action. ECF No. 38. *See* ECF No. 40, 44.

Following the Parties' extensive briefing of the Defendant's Motion to Dismiss and the Plaintiffs' Motion for Conditional Certification, the Parties engaged in informal settlement negotiations and some informal discovery. They subsequently agreed to participate in mediation with a retired federal judge, the Honorable Boyd N. Boland, and did so on November 22, 2021. The Parties then stipulated to a stay of this action pending the outcome of the mediation, which was entered by the Court on October 7, 2021. ECF No. 47. The Court lifted the stay on November 24, 2021, after the Parties informed the Court of their Settlement. ECF No. 49.

On February 7, 2022, the Parties submitted an initial Joint Motion seeking Preliminary Approval of Class Action Settlement. ECF 52. On February 9, 2022, Judge Maloney denied that motion without prejudice.  In his denial, Judge Maloney held that while "Generally, the Court finds the proposed settlement fair," that he had "identified one problem." ECF 53. Specifically, Judge Maloney held that for class action settlements, released claims must share a "factual predicate" with the claims pled in a complaint and ruled that the Settlement Agreement did not provide a meaningful limit on the release as proposed.  *Id.*

In accordance with the Court's instructions, the Parties amended the Settlement Agreement and filed a Joint Motion Seeking Preliminary Approval of Amended Class Action Settlement, and a Brief in support of that motion, on March 13, 2022. ECF No. 57. The Court granted the motion on March 15, 2022. ECF No. 58.

## III.    NOTICE PROVIDED TO SETTLEMENT CLASS MEMBERS

Pursuant to the Court's order granting preliminary approval, the Parties and the Settlement

Administrator approved by the Court, Rust Consulting Inc. ("Administrator"), sent notice of the Settlement to seventy-five (75) Settlement Class Members during a 60-day notice period. <u>Exhibit 2</u>. The 60-day notice period ended on June 11, 2022.

During the 60-day notice period, the Parties discovered that five (5) individuals who fell under the definition of the Settlement Class approved by the Court ("Additional Settlement Class Members") had been unintentionally omitted from the Class and had not been sent notice or given the opportunity to opt-out of or object to the Settlement, as required by Fed. R. Civ. P. 23(c)(2). The Parties promptly conferred and agreed to procedures to ameliorate that situation including: amending the Settlement Agreement to include the Additional Settlement Class Members, supplemental notice for the Additional Settlement Class Members, extensions of time for the filing the Joint Motion for Final Approval of the Settlement,, a resetting of the Final Fairness Hearing, and notice to all of the Settlement Class Members regarding the new date of the Final Fairness Hearing. ECF No. 61; *see also* <u>Exhibits 3 and 4.</u>

On July 5, 2022, the Court issued a Stipulated Order approving the Parties' proposed procedures, and resetting the Final Fairness Hearing for October 3, 2022 at 11:00 a.m. ECF No. 62.  The Parties then proceeded to carry out supplemental notice in accordance with the Stipulated Order. Exhibit 4.

The notices proposed by the Parties and approved by this Court provided the Settlement Class Members, and the Additional Settlement Class Members, with a clear description of this action, the terms of the Settlement, and the manner in which they may obtain additional information and/or object to the Settlement. *See* Fed. R. Civ. P. 23(e). The Administrator sent the notices to the 75 Settlement Class Members (72 via mail and 3 via email), and sent supplemental notice to them regarding the new date of the Final Fairness Hearing. <u>Exhibits 2</u> and 4. Class

Counsel sent the notices (with the corrected Hearing date) to the Additional Class Members. Exhibit 4 at ¶¶ 9-12.

Of the 80 Settlement Class Members who were sent notice, only one (1) Settlement Class Member returned an opt-out form. Exhibit 2 at ¶ 12. The form was not signed, and Class Counsel's attempts to reach out to the Class Member were unsuccessful. *Id.* The Parties determined that the opt-out should be considered effective. To date, no Settlement Class Member has objected to the Settlement. *See id.*; *see also* Exhibit 4 at. ¶ 13.

## IV.    PROPOSED SETTLEMENT

The Parties have agreed, for the purposes of the Settlement, to certification of the following Settlement Class:

> All of the actors, directors, and assistant directors who worked for the Murder Mystery Company, LLC in Colorado from August 18, 2017 to August 31, 2020.

The Parties have agreed to certification of this Settlement Class under Rule 23 of the Federal Rules of Civil Procedures.[4]

The Parties have further agreed that the Plaintiffs should be appointed as Class Representatives and that the Plaintiffs' undersigned counsel from HKM Employment Attorneys LLP ("Class Counsel") should be appointed as Class Counsel.

---

[4] The undersigned counsel for the Plaintiffs are aware that parties sometimes seek certification of an FLSA collective under 29 U.S.C. § 216(b) in motions for preliminary and final approval of a Rule 23 class action settlement; however, that approach is neither necessary or appropriate here because: (1) any potential FLSA claims in this case are subsumed and resolved through the Parties' resolution of the Colorado claims at a rate higher than the federal minimum wage (*see Brunson*, 433 P.3d at 97); (2) nothing in the FLSA prevents parties from resolving minimum wage claims under Rule 23 (*see generally,* 29 U.S.C. § 201 *et seq.*); (3) the collective action mechanism only allows employees who affirmatively file a consent to join (*see* 29 U.S.C. § 256); (4) the Settlement Agreement does not contemplate opt-in procedures, in addition to the more inclusive Rule 23 procedures; and (5) the contemporaneous sending of both opt-in and opt-out procedures would unduly complicate this action and confuse Settlement Class Members. *See Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1117 (D. Colo. 2017).

Subject to and contingent upon final approval from this Court, the Settlement Agreement and the Amendment to Settlement Agreement provide for the following relief to the Plaintiffs and Class Members:

1. A Settlement Amount to the Settlement Class of $55,830.00, to be distributed to the Class Members based primarily on the number of shows in which they participated/performed between August 2017 and August 2020. From this Settlement Amount, each Class Member: (A) will be paid for eight hours of work at the Colorado minimum wage that was in effect for 2020, $12.00 per hour; and (B) will also be paid for 2.5 hours of work at the 2020 Colorado minimum wage for each show in which he/she performed/participated from August 2017 to August 2020;

2. Service awards to the Plaintiffs for the time, effort, and assistance provided by the Plaintiffs, as well as the risk they undertook in bringing this action. The Parties have stipulated to a service award of $3,000.00 to Price, $2,500.00 to Onorato, and $2,500.00 to Lurig;

3. Payment to Brandon Price of $18,500.00 to resolve his individual claims of unjust enrichment, FLSA retaliation, and wrongful termination in violation of public policy;

4. Attorney's fees of $34,000.00, which is 29.5 percent of the Settlement obtained for the Plaintiffs and the Class Members;

5. Costs of $800.00; and

6. In exchange, the Parties and all of the Class Members who do not opt out of the Settlement during the 60-day notice period described below will

release all of the claims they brought or could have brought in this action which are based upon or reasonably relate to the pleadings in this lawsuit.

Class Counsel are experienced wage and hour attorneys who have litigated dozens of class and collective actions.[5] They have thoroughly investigated the Plaintiffs' claims, and based on their investigation, the Parties' exchange of information through informal discovery, and the arguments raised by the Parties in this litigation and in the November 22, 2021 mediation, Class Counsel believe that the Settlement is a fair and adequate compromise of this action.

The Defendant, who is represented by equally competent and experienced counsel, while continuing to expressly deny that it is liable for any violation of Colorado Wage and Hour Law or the FLSA, or for any other form of wrongdoing, agrees that the Settlement is a fair compromise and that it is in the Defendant's interest to resolve this action through the Settlement.

---

[5] The cases litigated by Class Counsel include, but are not limited to: *Finfrock v. DISH Network, LLC,* JAG Case No. 2021-0409A; *Mess v. Aquila Corporation*, No. 1:21-cv-01462-RM-NYW (D. Colo.); *Anderson v. Widespread Ganick, LLC*, No. 2021CV031699 (Den. Dist Ct.); *Simmons v. Isle of Capri Black Hawk, LLC*, No. 1:19-cv-00967-JLK (D. Colo.); *German v. Holtzman Enterprises, Inc.*, 19-cv-03540-PAB-STV (D. Colo.); *Price v. Vita Locators, LLC*, No. 1:20-cv-01868-CMA-SKC (D. Colo.); *Picknell v. Hard Rock Café International, Inc.*, No. 1:20-cv-03409-DDD-SKC (D. Colo.); *Barlow v. Westin DIA Operator, LLC*, No. 20-cv-01612-DDD-KLM (D. Colo.); *Jones v. Intrado Life & Safety, Inc.*, No. 1:20-DDD-NYW (D. Colo.); *Garechana v. Summit Subway, LLC*, 2019CV032622 (El Paso Dist. Ct.); *Williams v. Sabell's*, No. 2019CV031879 (Jefferson Dist Ct.); *Banton v. Board of Governors of the Colorado State University*, No. 2018CV00793-PAB-MEH (D. Colo.); *Leyvas v. Sage Dentistry II, LLC*, No. 18CV33524 (Den. Dist. Co.); *Sciarcon v. Colorado Seminary*, No. 17CV33790 (Den. Dist. Ct.); *Conoly v. Mercantile*, No. 2020CV030841 (Den. Dist. Ct.); *Pilmenstein v. Devereux Cleo Wallace*, No. 2017CV30319 (Jefferson Dist. Ct.) (affirmed by 2021 COA 59); *Ortez v. United Parcel Service*, No. 17-cv-01202 (D. Colo.); *Johnson v. Colorado Seminary*, No. 17-cv-02074 (D. Colo.); *Gallagher v. Total Community Options, Inc.*, No. 2017CV030953 (Den. Dist. Ct.); *Collins v. DKL Ventures*, LLC, No. 16-cv-00070 (D. Colo.); *Bowers v. Tension International, Inc.*, 16-0562-CV (W.D. Mo.); *VanPortfliet v. Carpet Direct Corporation*, No. 16-cv-00616 (D. Colo.); *Flannery v. Int Entertainment Consultants, Inc.*, No. 2016CV034325 (Den. Dist. Ct.); *Price v. Sprouts Farmers Market, LLC*, No. 16-cv-00855 (D. Colo.); *Crepeau v. PDQ Truck, LLC,* 1:15-cv-02750-CMA-MLC (D. Colo.); *Garrison v. Open Technology Solutions, LLC*, No. 2015CV030837 (Arapahoe Dist. Ct.); *Nesbitt v. FCHN, Inc.,* No. 14-cv-0090 (D. Colo.); and *Geiger v. Master United 12 LLC*, No. 14-cv-00240 (D. Colo.).

## V.    REQUEST FOR FINAL CLASS CERTIFICATION

As a preliminary matter, the Court must determine whether class certification is appropriate under Fed. R. Civ. P. 23(a) and (b). *See Bautista v. Twin Lakes Farms, Inc.*, No. 104-CV-483, 2007 WL 329162, at *2 (W.D. Mich. Jan. 31, 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 621 (1997) ("requirements of Rule 23," including adequacy of representation, "apply even in context of settlement-only class certification"). Because the Settlement Class meets the prerequisites of Rule 23(a) of numerosity, commonality, typicality, and adequacy of representation and the "predominance" requirement of Rule 23(b)(3), class certification is appropriate.

### A.    NUMEROSITY

The Settlement Class consists of 79 Members, accounting for the individual who has opted out of this litigation. As such, it is sufficiently numerous such that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *see also Bautista*, 2007 WL 329162, at *2 (citing Herbert Newberg & Alba Conte, Newberg on Class Actions, § 3:5 (4th ed. 2002) for principle that "class comprising 40 or more members presumed to be numerous").

### B.    COMMONALITY

There are questions of law and fact that are common to the Settlement Class. *See* Fed. R. Civ. P. 23(a)(2); *Cross v. Hots, Inc.*, No. 1:18-CV-00276-RJJ-PJG, 2019 WL 12288177, at *1 (W.D. Mich. Mar. 21, 2019). (citing *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) in holding that "[t]he commonality requirement is satisfied if there is a single factual or legal question common to the entire class"); *see also Bautista*, 2007 WL 329162, at *3 ("Commonality is satisfied by a general policy of the defendant that has allegedly affected all members of the class and that general policy is the focus of the litigation"). Such questions may include: (A) whether the Class Members were "employees" or "independent

contractors" under the FLSA and Colorado Wage and Hour Law; (B) whether the Class Members were paid the applicable minimum wage for all of the hours that they worked for the Defendant (*see* 7 C.C.R. 1103-1:9 (2020) ("If an employee is covered by multiple minimum or overtime wage requirements, the requirement providing a higher wage, or otherwise setting a higher standard, shall apply"); (C) the statute(s) of limitations that apply to the Class Members' claims; (D) whether the Defendant had a policy or practice of paying less than the applicable minimum wage for hours spent in trainings and/or "ride-along" shows; (E) whether the Defendant failed to pay minimum wages for time that the Class Members spent preparing for, rehearsing for, and tearing down shows; and (F) whether the Defendant's violations of Colorado Wage and Hour Law, if any, were "willful."

### C.  TYPICALITY

"[T]he claims or defenses of the representative Parties are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3); *see also Bautista,* 2007 WL 329162, at \*3 ("It is sufficient for typicality purposes that the representatives' claims and the class claims stem from the same event or are based on the same legal theory"). The Plaintiffs allege that they, like the other Class Members: (a) were misclassified as "independent contractors;" (b) were subject to a common policy or practice whereby the Defendant did not pay minimum wages for trainings and "ride-alongs;" and (c) were not paid minimum wages for all of the time they spent preparing for, rehearsing for, and tearing down shows. As such, the third prerequisite is satisfied.

### D.  ADEQUACY

The Class also satisfies the fourth and final prerequisite of Rule 23 because the Plaintiffs and Class Counsel have adequately and diligently represented the interests of the Settlement Class Members throughout this litigation. *See Cross*, 2019 WL 12288177, at \*1 (citing *Amchem Prod.*,

521 U.S. at 626 n. 20).

Accordingly, all of the prerequisites of Rule 23(a) continue to be satisfied in this case.

**E.  THE REQUIREMENTS OF FED. R. CIV. P. 23(B)(3)**

The Settlement Class also satisfies the conditions in Rule 23(b)(3). As explained above,

there are numerous legal and factual issues that are common to the Settlement Class, including:

(1)  whether the Class Members were "employees" or "independent contractors;" (2) whether the

Defendant had a policy or practice of failing to pay minimum wages for training/ride-along time;

(3) whether the Defendant had a policy or practice of failing to pay minimum wages for time spent

preparing, rehearsing, and tearing down shows; (4) whether the Defendant's alleged policies were

unlawful; (5) whether the Defendant's violations of the law, if any, were "willful;" and the

statute(s) of limitations applicable to the Plaintiffs' and Class Members' claims. Because these

issues "predominate over any questions affecting only individual members," class certification is

appropriate." *See id.*; *see also Widdis v. Marathon Petroleum Co., LP*, No. 13-CV-12925, 2014

WL 11444248, at *7 (E.D. Mich. Nov. 18, 2014) (When, as here, "common questions represent a

significant aspect of the case they can be resolved for all members of the class in a single

adjudication, there is a clear justification for handling the dispute on a representative rather than

on an individual basis'")

Moreover, the size of the Settlement Class and the small amount that could be claimed by

any one Class Member make it desirable to resolve all such claims in this action. *See* Fed. R. Civ.

P. 23(b)(3)(C); *see also Bautista*, 2007 WL 329162, at *3–4 (finding that class action was superior

where there was "a small amount in controversy for each Plaintiff" and "there has been no other

litigation commenced by any class member"). The Plaintiffs and the undersigned Class Counsel

are not aware of any action that has been filed by any Class Member other than the Plaintiffs. *Id.*;

*see also* Fed. R. Civ. P. 23(b)(3)(B). Nor are the Parties or their counsel aware of any other Class Member having expressed any interest in prosecuting a separate action. *See* Fed. R. Civ. P. 23(b)(3)(A). Moreover, the Parties are not aware of anything that would make this case especially difficult to manage as a class action. *See* Fed. R. Civ. P. 23(b)(3)(D).

Because the prerequisites of Rule 23(a) and the conditions of Rule 23(b)(3) are all met, the Parties respectfully ask the Court to grant final certification of the Settlement Class.

## VI.    REQUEST FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Sixth Circuit Court of Appeals has established a seven-factor test, known as the "*UAW* factors," to "assess whether or not a class action settlement is 'fair, reasonable, and adequate' under Federal Rule of Civil Procedure 23(e)." *Deja Vu*, 925 F.3d at 894–95 (citing *Gen. Motors*, 497 F.3d at 631). "Those factors include: (1) the 'risk of fraud or collusion,' (2) the 'complexity, expense and likely duration of the litigation,' (3) the 'amount of discovery engaged in by the Parties,' (4) the 'likelihood of success on the merits,' (5) the 'opinions of class counsel and class representatives,' (6) the 'reaction of absent class members,' and (7) the 'public interest.'" *Id.* "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).

The Parties maintain that the *UAW* factors weigh strongly in favor of granting final approval of the Settlement in this action.

### A.  LIKELIHOOD OF SUCCESS ON THE MERITS

"The fairness of each settlement turns in large part on the bona fides of the Parties' legal dispute." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). As such, courts deciding whether to grant final approval

of a proposed class action settlement must "weigh[] the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Id.* (citing *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981)). "[T]he district court must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the tradeoff embodied in the settlement is fair to unnamed members of the class." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309 (6th Cir. 2016).

There are numerous legitimate legal and factual disputes that place the outcome of this action in doubt. First, the Parties dispute whether the actors, directors, and assistant directors who worked for the Defendant were "employees" or "independent contractors" under Colorado Wage and Hour Law and the FLSA. *See* C.R.S. § 8-4-101(5) ("[R]elevant factors in determining whether a person is an employee include the degree of control…, the degree to which the person performs work that is the primary work of the employer; except that an individual primarily free from control and direction in the performance of the service, both under his or her contract for the performance of service and in fact, and who is customarily engaged in an independent trade, occupation, profession, or business related to the service performed is not an 'employee'"); *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 807-808 (6th Cir. 2015) ("economic realities" used to determine whether worker is "employee," which is a mixed question of law and fact).

Second, the Parties dispute whether the Plaintiffs and Class Members performed work for which they were not paid federal and Colorado minimum wages, and the nature and extent of that work. *See Chao v. Akron Insulation & Supply, Inc.*, 184 F. App'x 508, 512 (6th Cir. 2006) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) in holding that wage and hour plaintiff has burden of "show[ing] that [he/she] performed work for which they were not properly

paid"). The Plaintiffs allege that actors, directors, and assistant directors: (1) were not paid for trainings and "ride-along" shows; (2) were not paid minimum wages for the time they spent preparing for and tearing down shows; (3) were subject to improper deductions that reduced their wages; and (4) were not properly reimbursed for travel expenses. The Defendant denies these allegations, and asserts that the Plaintiffs' claims fail as a matter of law. *See* ECF Nos. 30 and 40.

Third, the Parties strongly disagree on whether the hours for which the Plaintiffs seek back wages are compensable "hours worked," as defined by the FLSA and Colorado Wage and Hour Law. *See* ECF No. 40, PageID.671-72; *see also* 29 C.F.R. §§ 785.35-785.39 (outlining various activities that are compensable and not compensable work); *Dekker v. Constr. Specialties of Zeeland*, Inc., No. 1:11-CV-252, 2012 WL 726741, at *4 (W.D. Mich. Mar. 6, 2012) (compensability of activities is primarily a question of fact).

Fourth, the Parties dispute whether a two, three, or a six-year statute of limitations applies to Colorado minimum wage claims – an important issue that has yet to be resolved by the Colorado appellate courts and which has caused a split in the federal courts of the District of Colorado. *See* C.R.S. § 8-4-122 (CWA's two- or three-year statute of limitations); *see also* C.R.S. § 13-80-103.5(1) (general six-year statute of limitations for liquidated debts); *see also Sobolewski v. Boselli & Sons, LLC*, 342 F.Supp.3d 1178, 1188-89 (D. Colo. 2018) (holding that general six-year statute applied); *see also Pilmenstein v. Devereux Cleo Wallace*, 492 P.3d 1059, 1067-69 (Colo. App. 2021) (recognizing that CMWA does not contain express statute of limitations); *see also Cordova-Gonzalez v. TW Lath-N-Stucco, Inc.*, No. 21-CV-01617-CMA-KMT, 2021 WL 5086065, at *2 (D. Colo. Nov. 2, 2021) (holding that C.R.S. § 13-80-103.5(1) applies to CMWA claims); *but see Balle-Tun v. Zeng & Wong, Inc.*, No. 21-CV-03106-NRN, 2022 WL 1521767, at *6 (D. Colo. May 13, 2022) (rejecting *Sobolewski* and *Cordova-Gonzalez* and finding that CWA's two- or three-

year statute of limitations applied to claims brought under CMWA).

Fifth, assuming that the CWA's statute of limitations, C.R.S. § 8-4-122, applies to the Plaintiffs' and Class Members' claims, the Plaintiffs will be required to establish that the Defendant's alleged violations were "willful" to extend the statutory period from two to three years and to establish that they are entitled to statutory damages under the CWA's penalties provisions. *See* C.R.S. § 8-4-109(3)(c) (additional penalties for "willful" violations of the CWA). To do so, the Plaintiffs must demonstrate that the Defendant knew or should have known that it was violating Colorado Wage and Hour Law. *See Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (wage violation is "willful" if the employer "either knew or showed reckless disregard for the matter of whether its conduct violated the statute"); *see also Pilmenstein,* 492 P.3d at 1066 ("Whether an employer acted willfully by failing to pay wages is a mixed question of fact and law").

Sixth, the Parties disagree on what damages, if any, the Plaintiffs and the Class Members may obtain if they prevail in establishing that the Defendant is liable for violating the FLSA and/or Colorado Wage and Hour Law. The Plaintiffs assert that the Defendant does not have complete and accurate records of the time worked by actors, directors, and assistant directors. As such, the Plaintiffs would be required to demonstrate how many hours they worked "as a matter of just and reasonable inference" if this case proceeded to trial. *See Anderson*, 328 U.S. at 687-88. The Defendant would have to rebut that showing through evidence that the hours put forth by the Plaintiffs were inaccurate. *See id.*

Litigation of these and other legal and factual issues would involve substantial risk for both the Plaintiffs and the Defendant. Absent the Settlement, the Plaintiffs would have to overcome the Defendant's motion to dismiss their claims. They would also have to prevail on motions for

conditional certification of an FLSA collective and a Rule 23 class. If they prevailed on one or both of these motions, they would have needed to defend against a motion or motions to decertify the class/collective and a motion for summary judgment that likely would have been filed by the Defendant. If the Plaintiffs were able to overcome those dispositive motions, they would have then been required to prevail on various issues of fact and mixed issues of law and fact at trial, including: (a) whether they were misclassified; (b) whether they were not properly compensated for hours they spent working for the Defendant; (c) whether the hours in question were "hours worked" under Colorado and federal law; (d) whether the Defendant's violations of the law, if any, were "willful;" and (e) the damages to which they are entitled.

Stated simply, the Plaintiff's likelihood of success on each of these issues is difficult to determine. What is clear, however, is that the Plaintiffs faced substantial risks were this litigation to proceed. In light of these risks, the value of the Settlement to the Settlement Class members is substantial. Each Settlement Class Member stands to be paid for eight hours of training time that the Plaintiffs allege were not properly compensated at the outset of their employment.[6] In addition each Class Member will be paid 2.5 hours of wages – for the time Plaintiffs allege they spent rehearsing, preparing for, and breaking down each show – for every show that they worked during the relevant period.[7]

The claims released by the Settlement Class Members are also reasonable and sufficiently narrow, as they share a factual predicate with the claims pled in the Complaint. *See Moulton,* 581

---

[6] The Plaintiffs alleged that each Class Member was required to attend nine hours of training time and perform in one "ride-along" show at the beginning of their employment. ECF No. 26 ¶ 26.

[7] The Plaintiffs alleged that Class Members performed 2-6 hours on such work for each show. ECF No. 26 ¶¶ 24-30.

F.3d at 349. The Settlement Agreement "release specifically cabins the categories of relinquished claims to those 'based upon' or 'reasonably related' to the pleadings and claims asserted," in the Complaint. *Deja Vu*, 925 F.3d at 900. Here, as in *Deja Vu*, the Settlement Agreement sufficiently and expressly narrows the release to any and all claims which reasonably relate to the pleadings in the lawsuit. Exhibit 1 at ¶ 7. Therefore, any "argument that the release covers claims 'completely ***unrelated*** to the lawsuit'" would "lack merit." *Déjà Vu*, 925 F.3d at 900 (emphasis in original).

Under these circumstances, the "likelihood of success on the merits," factor weighs in favor of granting final approval of the Parties' Settlement. *See Deja Vu*, 925 F.3d at 894–95.

### B. RISK OF FRAUD OR COLLUSION

The Settlement is not the result of fraud or collusion. *Deja Vu*, 925 F.3d at 894. On the contrary, it was negotiated only after spirited adversarial proceedings by counsel who are well versed in wage and hour law and in the complexities of class and collective actions. *See Cross*, 2019 WL 12288177, at *3. Prior to the Settlement, counsel for both Parties independently investigated and analyzed the factual and legal bases of the Plaintiffs' and Class Members' claims. The Parties vigorously litigated the Defendant's Motion to Dismiss and the Plaintiffs' Motion for Conditional Certification of FLSA Collective Action. They then engaged in a meaningful exchange of information during the months leading up to mediation with the Honorable Judge Boland (retired), and finally arrived at the terms of the Settlement after an all-day mediation.

In addition, the service awards and attorney's fees proposed in the Settlement are reasonable. Upon final approval, the Plaintiffs will receive the following service awards: $3,000.00 for Price (who initiated this action and participated in the mediation on behalf of the Class); $2,500 for Onorato; and $2,500 for Lurig. *Daoust v. Maru Rest., LLC*, No. 17-CV-13879, 2019 WL 2866490, at *5–6 (E.D. Mich. July 3, 2019) (holding that "service awards are common in class

action cases and are important to compensate plaintiffs for the time and effort expended in assisting

the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and

any other burdens sustained by plaintiffs" and that service award of $5,000.00 was reasonable).

With regard to attorney's fees, the undersigned Class Counsel is filing a motion seeking approval

of fees of $34,000.00, which is less than their lodestar and less than 30% of the relief obtained by

the Plaintiffs and Class Members. *See Daoust*, 2019 WL 2866490, at *5 (fees representing one

third of the common fund were "reasonable and consistent within the norms of class litigation in

this circuit"). Because the service awards and attorney's fees are reasonable, there is no reason to

believe that the Parties or their counsel engaged in self-dealing, nor is there any reason to believe

that they engaged in any other inappropriate conduct. *See Deja Vu*, 925 F.3d at 898.

### C.   COMPLEXITY, EXPENSE, AND LIKELY DURATION OF LITIGATION

As explained above, there are numerous important disputes that would need to be resolved

in this case in the absence of the Parties' Settlement. The Court would have to decide the

Defendant's motion to dismiss, the Plaintiffs' motion for conditional certification, motions for

class certification and/or decertification, and likely a motion for summary judgment. Based on the

years of experience of the undersigned counsel, this litigation would take several years and cost

both sides hundreds of thousands of dollars in attorney's fees and costs. As such, the "complexity,

expense, and likely duration of litigation" weigh in favor of approving the Settlement. *See Deja
Vu*, 925 F.3d at 894.

### D.   AMOUNT OF DISCOVERY ENGAGED IN BY THE PARTIES

While the Parties did not engage in formal discovery in this action, they nevertheless

engaged in a meaningful exchange of information prior to the Settlement, and as such this *UAW*

factor also weighs in favor of final approval. *See id*. 497 F.3d at 898 ("courts have held that

settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case'" (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)). In briefing the Defendant's motions to dismiss and the Plaintiffs' motion for conditional certification, both sides submitted numerous declarations and other evidence supporting their positions. The Parties then engaged in a day-long mediation with retired federal Judge Boland, at which they exchanged a significant amount of information regarding the Class Members, their rates of pay, and the hours they allegedly worked. It was only after the Parties briefing on both motions and exchanges at the mediation that they decided to settle on the terms set forth in the Settlement Agreement.

## E.  OPINIONS OF CLASS COUNSEL AND CLASS REPRESENTATIVES

As reflected in the Settlement Agreement, the Plaintiffs believe that the Settlement is a fair and reasonable compromise of their disputed claims. Exhibit 1. Additionally, Class Counsel, who are highly experienced in wage and hour class actions, independently investigated the facts and law in this case, and also believes that the Settlement is fair, reasonable, and adequate. Therefore, the "opinions of class counsel and the class representatives" weigh in favor of final approval. *See Deja Vu*, 925 F.3d at 894.

## F.  REACTION OF ABSENT CLASS MEMBERS

The "reaction of absent class members" also weighs in favor of granting this Motion. *See Deja Vu*, 925 F.3d at 895. The Administrator sent the notices approved by the Court to 75 Settlement Class Members. Exhibit 2. Class Counsel sent the same notices (with the corrected Final Fairness Hearing date) to the Additional Class Members. Exhibit 4. Of the 80 putative Settlement Class Members, only one opted out. None of the Class Members filed an objection to the Settlement. Accordingly, the Court and the Parties can reasonably conclude that the absent

Class Members do not disagree with the Settlement, and that most of them believe its terms to be fair and reasonable.

### G.  PUBLIC INTEREST

"Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Deja Vu*, 925 F.3d at 895 (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). In this case, the Parties were able to come to a reasonable compromise of their disputes at a relatively early point in the litigation. Moreover, under the Settlement the Plaintiffs and the Class Members will receive compensation for most of the hours that they are alleged to have been underpaid or unpaid.

Under these circumstances, the Parties believe the public interest, and indeed all of the *UAW* factors, weigh in favor of granting final approval of the Settlement. *See id.*

### H.  ADEQUACY OF NOTICE TO THE SETTLEMENT CLASS MEMBERS

"Rule 23(c)(2)(b) requires the class to provide notice of the nature of the action; the definition of the class certified; the class claims, issues, or defenses; information on how a class member can enter an appearance with their lawyer; information on how class members can opt into or out of the settlement; and the binding effect of the settlement agreement." *Deja Vu*, 925 F.3d at 895. Additionally, Courts in this Circuit have held that "due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)).

The notices approved by the Court and sent to the Settlement Class Members complied with all of the requirements of Fed. R. Civ. P. 23(c)(2)(b). *See* Exhibit 2 at ¶¶ 6-11. The notices

31

and the procedures utilized by the Parties and the Administrator were "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *See Vassalle*, 708 F.3d at 759. As such, notice to the Class has been adequate.

## VII.    CONCLUSION

For the reasons set forth above and in the Parties' Joint Motion seeking Preliminary Approval of Class Action Settlement (ECF 52), the Parties respectfully move the Court to:

(1) Grant final certification under Fed. R. Civ. P. 23 of the Settlement Class, consisting of

> All individuals who worked for the Murder Mystery Company as actors, directors, and/or assistant directors in Colorado from August 18, 2017 to August 31, 2020.

(2) Grant final approval of the Settlement reflected in the Parties' Settlement Agreement and the Amendment to the Settlement Agreement; and

(3) Order the Defendant to pay the Settlement Amount, and the Administrator to distribute the Settlement in accordance with the Settlement Agreement and Amendment.

Respectfully submitted on this 7th day of September, 2022.

/s/ Adam M. Harrison                                                   /s/ Brian M. Schwartz
_____                            _____
Shelby Woods                                                               Brian M. Schwartz
Adam M. Harrison                                                        Miller, Canfield, Paddock & Stone
HKM Employment Attorneys LLP                              *Attorneys for the Defendant*
*Attorneys for the Plaintiffs*                                         150 West Jefferson Street, Suite 2500
730 17th Street, Suite 750                                            Detroit, Michigan 58226
Denver, Colorado 80202                                             313.963.6420
720.255.0370                                                              schwartzb@millercanfield.com
swoods@hkm.com

aharrison@hkm.com

Brian E. Koncius (P69278)
Bogas & Koncius PC
*Attorneys for the Plaintiffs*
31700 Telegraph Road, Suite 160
Bloomfield, Michigan 48025
248.502.5000
bkoncius@kbogaslaw.com

## **WORD COUNT CERTIFICATE**

Pursuant to LCivR 7.2(b)(ii), the undersigned certifies that the foregoing Brief in support of their dispositive motion contains 7,059 words (exclusive of the cover page, table of contents, table of authorities, signature block, exhibits word count certificate, and certificate of service), per the word count tool of Microsoft Word.

Dated on this 7th day of September, 2022.

/s/ Adam M. Harrison

_____